UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE VELASQUEZ,

          Plaintiff,

   v.

CAROLYN W. COLVIN,

          Defendant.

Case No.  14-cv-04361-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 22

## INTRODUCTION

Plaintiff Jose Velasquez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  Dkt. Nos. 17, 22. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff was born on July 12, 1967.  AR 26.  He grew up in Mexico, where he attended school through the sixth grade.  AR 460.  He moved to the United States at age 32.  *Id.*  He has worked as a farm laborer and landscape laborer.  AR 25.  Plaintiff was injured in a motor vehicle accident in 2000 and eventually stopped working in 2011 due to severe back pain and weakness in his arms and legs, as well as numbness in his legs.  AR 54, 347, 459-61.

No treatment records appear prior to 2011.  Plaintiff had no medical coverage for several years and reported being homeless with no regular income for over five years.  AR 61, 461.  In July 2011, internist Dr. Eugene McMillan saw Plaintiff for a consultative evaluation.  AR 456-58. Dr. McMillan noted Plaintiff had a painful gait and relied on a crutch to assist with ambulation.

1    AR 457-58.  The consultative evaluation revealed Plaintiff had limited range of motion of the

2    lumbar spine, normal range of motion in his knees and ankles, and diminished ankle jerk reflexes;

3    he was unable to get onto the examination table.  *Id.*  Plaintiff also complained of bilateral lower

4    back pain with straight leg raising while sitting in a chair.  AR 458.  Dr. McMillan opined Plaintiff

5    was limited to standing and walking for two hours per day in an eight-hour workday; sitting for

6    less than six hours; occasionally lifting and carrying only 10 pounds; and engaging in activities

7    that do not require bending, stooping, crawling, climbing, and kneeling.  *Id.*

8         On August 4, 2011, state agency medical consultant P. Bianchi, M.D., reviewed Plaintiff's

9    medical record relevant to his physical condition.  AR 90-91.  Dr. Bianchi noted the medical

10   evidence of record did not support Dr. McMillan's restrictive residual functional capacity

11   ("RFC").  AR 90, 94.  Dr. Bianchi emphasized Plaintiff had no difficulty standing, sitting, and/or

12   walking at the field office and made no mention of Plaintiff using an assistive device.  AR 90.

13   Additionally, Dr. Bianchi questioned Dr. McMillan's failure to test Plaintiff's ability to ambulate

14   without the assistive device.  *Id.*  Ultimately, Dr. Bianchi opined that Plaintiff had sufficient

15   functional capacity for medium work.  AR 92-93, 95.

16        On September 8, 2011, C. Arpaci, Psy.D., evaluated Plaintiff in connection with his

17   disability applications.  AR 459-63.  Plaintiff reported experiencing worsening pain in his legs and

18   feet following a car accident in 2000.  AR 459-60.  Plaintiff also reported that he sometimes

19   cannot "feel his leg and that he feels a burning, tingling [sensation] in his hands and feet."  AR

20   460.  Dr. Arpaci noted Plaintiff was confused about the purpose of the evaluation and stated he

21   believed it was to obtain medical help.  AR 461.  Plaintiff told Dr. Arpaci he had no medical

22   coverage and no means for medical treatment, and was concerned about medications and medical

23   care.  AR 460, 462.  He noted that when he had money, he would give it to a friend who would

24   bring him pain medications from Mexico.  AR 460.

25        Dr. Arpaci noted Plaintiff reported several symptoms consistent with depression and

26   anxiety, including periods of sadness, difficulty falling asleep due to worry, and despondency over

27   his chronic pain, homelessness, and lack of employment.  AR 460-62.  Plaintiff reported his

28

United States District Court
Northern District of California

2

United States District Court
Northern District of California

medical condition caused sexual dysfunction since the accident and his wife left him in 2005, taking their three children with her back to Mexico.  AR 460.  He was not in contact with his family and could not afford to call them in Mexico.  AR 462.  Dr. Arpaci opined Plaintiff had moderate limitations adapting to changes, hazards, or stressors in the workplace setting, and moderate to severe limitations following complex/detailed instructions and performing complex tasks.  AR 463.  He further opined Plaintiff could maintain pace and persistence to carry out simple job instructions; and could appropriately relate to co-workers, supervisors, and the general public.  *Id.*

On October 13, 2011, state agency medical consultant Adrianne Gallucci, Psy.D., reviewed Plaintiff's medical record relevant to his mental condition and determined Plaintiff did not have a medically determinable mental impairment.  AR 91.  Dr. Gallucci noted Plaintiff's failure to allege mental health issues in his disability applications, the lack of any mental health treatment, and the benign consultative examination identifying no other depressive symptoms besides periods of worry and sadness.  *Id.*

On December 2, 2011, Plaintiff presented at the emergency room of Sutter Delta Medical Center ("SDMC"), complaining of increasing back pain, increasing episodes of urinary incontinence, intermittent bilateral leg numbness, and recent abdominal pain with vomiting.  AR 537-38.  The emergency room physician noted Plaintiff appeared in painful distress and had back pain with straight leg raising bilaterally upon exam.  AR 537.  In addition, Plaintiff had decreased sensation to light touch on both lower extremities, decreased strength in plantar and dorsiflexion of the toes, and decreased rectal tone, all findings consistent with a spinal disorder.  *Id.*  Also, he had a mildly antalgic gait.  *Id.*  An MRI of Plaintiff's lumbar spine revealed mild spinal changes at the L5-L1 level; moderate sized right paracentral disk herniation and protrusion at the L5-L1 level; small bilateral additional neural foraminal protrusion and disk bulges at the L5-L1 level; and no evidence of cord compression.  AR 542.  The emergency room physician advised Plaintiff to follow up with the Pittsburg Health Center on an outpatient basis.  AR 538.  The emergency room report does not indicate Plaintiff used an assistive device to ambulate.

3

1    In January 2012, Plaintiff established care with Kenneth Brooks, M.D., at Pittsburg Health

2    Center.  AR 512-14.  Upon exam, Dr. Brooks noted Plaintiff had positive straight leg raising

3    bilaterally, tenderness to palpation, and limited mobility secondary to pain.  AR 512-13.  Dr.

4    Brooks diagnosed Plaintiff with chronic lower back pain, abdominal pain, and depression.  AR

5    513.  He prescribed Naprosyn and Norco for the pain, and Celexa for the depression.  AR 514.

6    On January 21, 2012, Plaintiff presented at the emergency department of SDMC

7    complaining of left side abdominal pain.  AR 528.  Plaintiff's physical examination showed no

8    tenderness in his thoracic and lumbar spine, no edema, and no musculoskeletal aches or pain.  *Id.*

9    The emergency room report does not indicate Plaintiff used an assistive device to ambulate.

10   On March 14, 2012, state agency medical consultant C. David, M.D., reviewed Plaintiff's

11   medical record relevant to his physical condition.  AR 126.  Dr. David stressed Plaintiff's "huge"

12   credibility and inconsistency issues.  *Id.*  Dr. David specifically remarked on Plaintiff not using an

13   assistive device and exhibiting no apparent physical difficulties or limitations at the field office.

14   *Id.*  Dr. David further noted Plaintiff's ability to answer most questions in English before the

15   phone translator presented them in English.  *Id.*  Dr. David found the objective findings did not

16   support Dr. McMillan's restrictive RFC and affirmed Dr. Bianchi's prior RFC assessment of

17   Plaintiff's medium work capability.  AR 126, 129.

18   On March 20, 2012, state agency medical consultant Alan Goldberg, Psy.D., reviewed

19   Plaintiff's medical record relevant to his mental condition and affirmed the previous decision that

20   Plaintiff did not have a medically determinable mental impairment.  AR 117.

21   On May 30, 2013, Plaintiff saw Fariba Vesali, M.D., for a comprehensive orthopedic

22   evaluation.  AR 515-20, 523-26.  Plaintiff's chief complaint was low back pain, and he reported

23   his feet getting numb, causing him to fall frequently.  AR 523.  Dr. Vesali observed Plaintiff take

24   off his shoes, put them on, and get off the exam table with no difficulty.  AR 524.  Plaintiff walked

25   with a normal gait and did not use an assistive device.  *Id.*  Plaintiff exhibited limited range of

26   motion in his cervical spine and deferred range of motion in his lumbar spine.  *Id.*  Dr. Vesali

27   found 5/5 motor strength, including handgrip, in Plaintiff's upper extremities.  AR 525.  He also

28

*United States District Court*
*Northern District of California*

4

noted giveaway weakness.  *Id.*  Plaintiff's straight leg raising test was negative bilaterally in a seated position, and he had pain with straight leg raising in the supine position.  *Id.*  He had no sensation to light touch on his feet and decreased sensation in a patchy distribution in his lower extremities.  *Id.*  Dr. Vesali diagnosed degenerative disc disease, lumbar spine, and possible mild carpal tunnel syndrome.  *Id.*  He opined Plaintiff could walk, stand, and/or sit for six hours in an eight-hour workday with breaks every two hours; did not need an assistive device for ambulation; could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could perform postural activities; and had no environmental limitations.  AR 526.

In October 2013, Plaintiff presented at Antioch Health Center on two different occasions complaining of back pain.  AR 548-58.  David H. Lee, M.D., observed tenderness to palpation and tight muscles along the spine.  AR 554.  Dr. Lee diagnosed depression and doubled the dosage of Celexa.  AR 554.  He prescribed Flexeril and Naproxen for pain.  *Id.*  He also recommended Plaintiff start physical therapy for his back pain.  *Id.*  There were no indications Plaintiff used an assistive device for ambulation.

Plaintiff returned to see Dr. Brooks on November 19, 2013.  AR 568.  During this visit, Plaintiff reported experiencing numbness and coldness in his right lower extremity.  *Id.*  Dr. Brooks noted Plaintiff did not take medications as prescribed, but rather took medications from Mexico.  *Id.*  Plaintiff's initial blood work yielded positive results for methamphetamines.  *Id.*  Subsequent urine toxicology, however, yielded negative results.  *Id.*  Dr. Brooks observed a decreased range of motion, tenderness, bony tenderness, pain, and muscle spasm.  AR 617.  He also observed absent ankle jerk reflexes in both ankles and absent knee jerk reflexes in both knees.  *Id.*  Dr. Brooks noted Plaintiff had atrophy and abnormal muscle tone.  *Id.*  He referred Plaintiff for a lumbar spine MRI study and a comprehensive RFC evaluation.  AR 571.

On November 21, 2013, Dr. Brooks completed a questionnaire indicating Plaintiff had disabling symptoms.  AR 566.  Specifically, Dr. Brooks opined Plaintiff could not ambulate without a cane, had an antalgic gait, and could not sustain full-time work that required him to be on his feet for at least two hours of an eight-hour workday.  *Id.*

United States District Court
Northern District of California

5

1    A subsequent MRI study in December 2013 revealed degenerative change "moderate in

2    severity" with "mild" spondylolisthesis at L5-S1.  AR 577.

3    On December 30, 2013, Jason Pemberton, P.T., conducted a general functional capabilities

4    examination pursuant to Dr. Brooks' referral.  AR 580-89.  Plaintiff demonstrated the ability to

5    perform all of the simulation tasks, even though testing took 2.75 hours, with six rest periods, to

6    complete.  AR 580.  Mr. Pemberton found Plaintiff could at most lift five pounds.  *Id.*  Plaintiff

7    had positive straight leg raising at 10 degrees limited by pain and he exhibited limited lumbar

8    range of motion.  AR 583-84.  Mr. Pemberton noted Plaintiff appeared unsteady and unsafe

9    without an assistive device.  AR 587.  He recommended Plaintiff participate in a program of

10   cardiovascular conditioning, strengthening, and flexibility exercises.  AR 580.

11   On January 13, 2014, Dr. Brooks submitted a report to Plaintiff's counsel opining Plaintiff

12   could not perform activities requiring bending of his spine, prolonged walking or standing, and

13   lifting.  AR 592.  He stated that the functional capacity evaluation and the lumbar spine MRI "are

14   consistent with [his] observations of Mr. Velasquez during clinic visits."  *Id.*  Dr. Brooks further

15   stated, "[Mr. Velasquez] has difficulty walking, even with use of a single-point cane.  Upon exam,

16   he has weakness in his lower extremities and loss of sensation in his left calf.  He has limited

17   range of motion of the spine."  *Id.*  Dr. Brooks continued:

18   I have no way of knowing a patient's exact experience of pain but Mr. Velasquez
     appears to be in extreme pain and his reports are consistent with range of motion
19   testing and with his recent MRI study.  The MRI shows several areas of concern,
     especially at L5-S1, which are the likely cause of Mr. Velasquez's difficulties.  The
20   functional capacity evaluation conducted by our rehabilitation therapy team is quite
     comprehensive, directing a patient to perform a wide variety of tasks that mimic
21   workplace functions.  Staff push patients to perform at their maximum capacity.
     During Mr. Velasquez's evaluation, several tasks had to be discontinued because
22   staff found Mr. Velasquez did not even have the lower extremity strength to
     perform safe body mechanics.  His performance during this evaluation is consistent
23   with how he presents during visits with me.

24   *Id.*  Dr. Brooks further stated, "At this time, Mr. Velasquez is not suitable for activities requiring

25   bending of his spine, or prolonged walking, or standing.  He should avoid lifting.  He needs further

26   evaluation to determine what other measures, including surgery, might provide him with relief."

27   *Id.*

28   6

United States District Court
Northern District of California

United States District Court
Northern District of California

On February 19, 2014, Plaintiff presented at the emergency department of Contra Costa Regional Medical Center ("CCRMC") complaining of abdominal pain. AR 595-600. Upon examination, Plaintiff exhibited normal range of motion in his neck and supple neck, and had negative kernig's and brzynski's signs. AR 595. Examination of Plaintiff's musculoskeletal system also showed normal range of motion and normal strength. AR 596. Examination of Plaintiff's extremities revealed no edema and no calf tenderness. *Id.* A CT study of his abdomen and pelvis noted "severe degeneration of the L5-S1 disc . . . [and] mild narrowing and bulging of the L4-L5 disc . . . ." AR 599. The emergency room report did not indicate Plaintiff used an assistive device to ambulate.

On May 2, 2014, Plaintiff presented at the emergency department of SDMC complaining of abdominal pain and vomiting. AR 609-14. A CT study of his abdomen and pelvis again noted "signs of severe disc degeneration at L5-S1 with mild disc degeneration elsewhere." AR 614. Plaintiff's physical examination showed no back pain, no lower back tenderness, no edema, and good bilateral strength and sensation in both his arms and legs. AR 610. The emergency room report did not indicate Plaintiff used an assistive device to ambulate.

Later in May 2014, Plaintiff saw Jose L. Barrios, M.D., at Brentwood Health Center for a follow-up on an outpatient basis. AR 623. Dr. Barrios noted Plaintiff was depressed and "state[d] that he has been feeling really sad for the last several months. He often cries . . . . [H]e is very lonely. He has no family here. His mother died last year in Mexico. He also does not have many friends here. He is not suicidal." *Id.*

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

On May 12, 2011, Plaintiff filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). AR 109, 299-303. On May 27, 2011, he also filed an application for Supplemental Security Income under Title XVI of the Act. AR 110, 304-12. He originally alleged his disability began on January 10, 2011, but subsequently amended his disability onset date to May 1, 2011. AR 299, 436. The Social Security Administration ("SSA") denied both claims on October 13, 2011, finding that Plaintiff did not qualify for disability

7

1    benefits.  AR 133-37.  Plaintiff subsequently filed a request for reconsideration, which SSA

2    denied.  AR 140-45.

3           On May 8, 2012, Plaintiff requested a hearing before an Administrative Law Judge

4    ("ALJ").  AR 149-50.  ALJ Richard P. Paverdure conducted a hearing on October 31, 2013.  AR

5    43-84.  Through the use of a Spanish-speaking interpreter, Plaintiff testified in person at the

6    hearing and was represented by counsel, Rosemary Dady.  AR 45.  The ALJ heard testimony from

7    Vocational Expert Gerald Belchick.  *Id.*  After the hearing, the ALJ agreed to leave the record

8    open to allow submission of more medical evidence.  AR 83.  Plaintiff subsequently underwent

9    clinical evaluations, a lumbar spine MRI study, and a comprehensive functional capacity

10   evaluation, reports of which were all submitted to the record.  AR 565-92.

**A.      Plaintiff's Testimony**

12          With the help of a Spanish-speaking interpreter, Plaintiff testified at his October 2013

13   hearing before the ALJ, .  AR 45-77.  He testified he was unable to work due to back pain.  AR 48.

14   Plaintiff reported having difficulties with bending, holding himself up, and putting on his pants

15   and socks.  AR 52.  He reported feeling a burning pain in his back and numbness in his feet.  AR

16   55.  He reported intermittent weakness in his legs, causing him to fall.  AR 56-57.  He reported

17   needing a cane or walking stick to help him walk.  AR 57.  He reported needing rest breaks after

18   10 or 15 minutes of walking.  AR 64.  He reported having difficulties with memory and with

19   urinary incontinence.  AR 69-70.  He reported having difficulties with his hands going to sleep.

20   AR 54.  In addition to these physical problems, Plaintiff also reported feeling sad most of the time,

21   especially since he lost his family and his mother.  AR 67.

**B.      Vocational Expert's Testimony**

23          The vocational expert testified that Plaintiff's past experience included that of a farm

24   laborer, Dictionary of Occupational Titles[1] ("DOT") code 407.687-010; landscape laborer, DOT

---

[1] The DOT is published by the Department of Labor.  *See* 20 C.F.R. § 416.966(d)(1).  It lists requirements of various occupations, including the level of mental reasoning required for each occupation.  *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 982 (C.D. Cal. 2005).  The DOT uses a six-point scale to classify reasoning levels required for specific jobs.  *Id.*

1   408.687-014; and farm labor supervisor, DOT 404.131-010.  AR 75.

2          The ALJ asked whether jobs were available at the light or sedentary level that could be

3   performed given the following hypothetical: "Assume a capacity for—and we're going to rule out

4   past work here exertionally.  But assume a capacity for light work with no ladders, ropes or

5   scaffolds, all other postural are occasional, and let's assume for the purposes of this hypothetical

6   no usable English language ability[:] reading, speaking[,] or writing in English."  AR 78.  The

7   vocational expert testified that such a person would be able to work as a kitchen helper, DOT

8   318.687-010; a cleaner/janitor, DOT 301.474-010; and as a factory assembler, DOT 706.684-022.

9   AR 78-79.

10  **C.      The ALJ's Findings**

11         The regulations promulgated by the Commissioner of Social Security provide for a five-

12  step sequential analysis to determine whether a Social Security claimant is disabled.[2]  20 C.F.R. §

13  404.1520(a).  The sequential inquiry is terminated when "a question is answered affirmatively or

14  negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer*

15  *v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential

16  inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r*

17  *Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the

18  Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v.*

19  *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

20         The ALJ must first determine whether the claimant is performing "substantial gainful

21  activity," which would mandate that the claimant not be found disabled regardless of medical

22  condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ

23  determined Plaintiff had not performed substantial gainful activity since May 1, 2011.  AR 19.

24         At step two, the ALJ must determine, based on medical findings, whether the claimant has

25

26  _____

27  [2] Disability is "the inability to engage in any substantial gainful activity" because of a medical
    impairment which can result in death or "which has lasted or can be expected to last for a
    continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

28                                                       9

1   a "severe" impairment or combination of impairments as defined by the Social Security Act.  20

2   C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20

3   C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairment:

4   degenerative disc disease of the lumbar spine, with disc protrusion at the L5-S1 level.  AR 19.

5           If the ALJ determines the claimant has a severe impairment, the process proceeds to the

6   third step, where the ALJ must determine whether the claimant has an impairment or combination

7   of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

8   Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment either meets the listed

9   criteria for the diagnosis or is medically equivalent to the criteria for the diagnosis, he is

10  conclusively presumed disabled, without considering age, education, and work experience.  20

11  C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff did not have an impairment or

12  combination of impairments that meet the listings.  AR 21.

13          Before proceeding to step four, the ALJ must determine the claimant's Residual Function

14  Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work

15  setting, despite mental or physical limitations caused by impairments or related symptoms.  20

16  C.F.R. § 404.1545(a)(1).  In assessing an individual's RFC, the ALJ must consider all of the

17  claimant's medically determinable impairments, including the medically determinable

18  impairments that are not severe.  20 C.F.R. § 404.1545(e).  Here, the ALJ determined Plaintiff had

19  the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and

20  416.967(a).[3]  AR 21.

21          The fourth step of the evaluation process requires the ALJ determine whether the

22  claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (f).

23  Past relevant work is work performed within the past 15 years that was substantial gainful activity,

24

25  ─────────────────────

26  [3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
    carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as
    one which involves sitting, a certain amount of walking and standing is often necessary in carrying

27  out job duties.  Jobs are sedentary if walking and standing are required occasionally and other
    sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

28                                                    10

United States District Court
Northern District of California

1   and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the

2   claimant has the RFC to do his past relevant work, the claimant is not disabled.  20 C.F.R. §

3   404.1520(a)(4)(iv).  Here, the ALJ determined Plaintiff could not perform any past relevant work.

4   AR 25.

5           In the fifth step of the analysis, the burden shifts to the Commissioner to prove there are

6   other jobs existing in significant numbers in the national economy which the claimant can perform

7   consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

8   404.1520(g), 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of

9   a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404,

10  Subpart P, Appendix 2.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here,

11  based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and

12  RFC, the ALJ determined that jobs exist in significant numbers in the national economy that

13  Plaintiff can perform.  AR 26.

14  **D.      ALJ's Decision and Plaintiff's Appeal**

15          On February 20, 2014, the ALJ issued an unfavorable decision finding Plaintiff was not

16  disabled.  AR 11-27.  This decision became final when the Appeals Council declined to review it

17  on July 23, 2014.  AR 1-5, 10.  Having exhausted all administrative remedies, Plaintiff

18  commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On March 11, 2015,

19  Plaintiff filed the present Motion for Summary Judgment.  Dkt. No. 17.  On June 5, 2015, the

20  Defendant filed a Cross-Motion for Summary Judgment.  Dkt. No. 22.

21                                       **LEGAL STANDARD**

22          This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

23  U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by

24  substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*,

25  246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a

26  scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

27  adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

28

United States District Court
Northern District of California

11

(quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The

court must consider "the administrative record as a whole, weighing the evidence that both

supports and detracts from the ALJ's conclusion."  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th

Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1987)).  However, "where the

evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's

decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Determinations of credibility,

resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the

ALJ.  *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports

the ALJ's decision.  *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).  A court may not

reverse an ALJ's decision on account of an error that is harmless.  *Molina v. Astrue*, 674 F.3d

1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

(9th Cir. 2006)).  "'[T]he burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination.'"  *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409

(2009)).

## DISCUSSION

Plaintiff raises three arguments in his motion: (1) the ALJ improperly rejected the treating

physician's opinion; (2) the ALJ failed to properly evaluate his depression and its impact on his

ability to function; and (3) the ALJ failed to include in his RFC Plaintiff's difficulties with

English.[4]

### A.      Treating Physician's Opinion

As summarized above, Dr. Brooks opined that Plaintiff could not ambulate without a cane

and sustain full-time work that required him to be on his feet for at least two hours out of an eight-

hour workday.  AR 566.  In determining Plaintiff's RFC, the ALJ accorded "some weight" to Dr.

---

[4] Plaintiff also argues that the ALJ's decision is not supported by substantial evidence.  Pl.'s Mot. at 5-6.  However, the Court shall address this generalized argument as part of its analysis related to Plaintiff's three more specific arguments.

12

1    Brooks' opinion.  AR 24.  However, the ALJ determined that the record evidence did not support

2    Dr. Brooks' opinion, finding it "conclusory and not well supported by the medical evidence of

3    record as a whole."  *Id.*

4         Plaintiff argues that Dr. Brooks' opinion is well supported by the record, which includes

5    notes he made from several clinic visits with Plaintiff.  Pl.'s Mot. at 3.  Plaintiff further argues that

6    the ALJ improperly relied on a one-page emergency room record from January 2012 to show a

7    normal physical exam.  *Id.* at 5.  Defendant argues the ALJ properly evaluated Dr. Brooks'

8    assessment of Plaintiff and sufficiently explained the rationale for his decision.  Def.'s Mot. at 11.

9         1.   Legal Standard

10        When determining whether a claimant is disabled, the ALJ must consider each medical

11   opinion in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b);

12   *Zamora v. Astrue*, 2010 WL 3814179, at *10 (N.D. Cal. Sept. 27, 2010).  In deciding how much

13   weight to give any medical opinion, the ALJ considers the extent to which the medical source

14   presents relevant evidence to support the opinion.  20 C.F.R. § 416.927(c).  Generally, more

15   weight is given to an opinion supported by medical signs and laboratory findings, and the degree

16   to which the opinion provides supporting explanations and is consistent with the record as a

17   whole.  *Id.*

18        In conjunction with the relevant regulations, the Ninth Circuit "[has] developed standards

19   that guide the analysis of an ALJ's weighing of medical evidence."  *Ryan v. Comm'r of Soc. Sec.*,

20   528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  Courts "distinguish among the

21   opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

22   those who examine but do not treat the claimant (examining physicians); and (3) those who neither

23   examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830

24   (9th Cir. 1995).  "By rule, the Social Security Administration favors the opinion of a treating

25   physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing

26   20 C.F.R. § 404.1527).  If a claimant has a treatment relationship with a provider, and that

27   provider's opinion is supported by clinical evidence and not inconsistent with the record, the

28                                              13

United States District Court
Northern District of California

1   provider will be given controlling weight.  20 C.F.R. § 416.927(c)(2).  "The opinion of a treating

2   physician is given deference because 'he is employed to cure and has a greater opportunity to

3   know and observe the patient as an individual.'"  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169

4   F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

5           "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-

6   supported' or because it is inconsistent with other substantial evidence in the record, the [SSA]

7   considers specified factors in determining the weight it will be given."  *Orn*, 495 F.3d at 631.

8   "Those factors include the '[l]ength of the treatment relationship and the frequency of

9   examination' by the treating physician; and the 'nature and extent of the treatment relationship'

10  between the patient and the treating physician."  *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record.

16  *Id.* (citing 20 C.F.R. § 404.1527(c)(3)-(6)).  Nonetheless, even if the treating physician's opinion

17  is not entitled to "controlling weight," it is still entitled to deference.  *See id.* at 632 (citing SSR

18  96–2p[5] at 4).  Indeed, "[i]n many cases, a treating source's medical opinion will be entitled to the

19  greatest weight and should be adopted, even if it does not meet the test for controlling weight."

20  SSR 96-2p at 4.

21          2.    Application to the Case at Bar

22          There is no dispute that Dr. Brooks is Plaintiff's treating physician.  Having reviewed the

23  record, the Court finds that substantial evidence supports the ALJ's decision to give his opinion

24

25  ───────────────
    [5] "[Social Security Rulings] do not carry the 'force of law,' but they are binding on ALJs
26  nonetheless."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); 20
    C.F.R. § 402.35(b)(1).  The Ninth Circuit defers to the rulings unless they are "plainly erroneous
27  or inconsistent with the Act or regulations."  *Chavez v. Dep't of Health and Human Servs.*, 103
    F.3d 849, 851 (9th Cir. 1996).

28                                                      14

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    some weight.  Plaintiff presented at Dr. Brooks' clinic in November 2013 for a follow-up and for

2    Dr. Brooks to complete Plaintiff's disability application.  AR 23, 568.  At that time, Dr. Brooks

3    reported Plaintiff was not taking medications as prescribed, but rather taking medications from

4    Mexico.  He also did not have Plaintiff's MRI for review.  *Id.*  Two days later, without reviewing

5    the MRI of Plaintiff's lumbar spine, Dr. Brooks opined Plaintiff could not ambulate without a cane

6    and could not sustain full-time work that required him to be on his feet for at least two hours out

7    of an eight-hour workday.  AR 566.  Two months later, after reviewing Plaintiff's MRI, Dr.

8    Brooks opined that the MRI supported his finding that Plaintiff had "difficulty walking, even with

9    use of a single-point cane."  AR 592.  Although Dr. Brooks asserted the MRI showed "areas of

10   concern, especially at L5-S1" that supported severe limitations, AR 592, the MRIs of Plaintiff's

11   lumbar spine revealed, at most, moderate degenerative changes, AR 542, 577.  One of the MRIs

12   describes L5-L1 as showing only "[m]ild spinal changes" with no cord compression anywhere,

13   AR 542, and the other shows moderate degenerative changes with "mild spondylolisthesis."  AR

14   577.  Similarly, at his May 2013 orthopedic examination, Plaintiff exhibited normal gait and

15   ambulated without the assistance of a cane, AR 24, 523-24, in contrast to Dr. Brooks' opinion that

16   Plaintiff had "difficulty walking, even with use of a single-point cane," AR 592.  *See Tommasetti*

17   *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding ALJ's rejection of a treating physician's

18   questionnaire responses which were inconsistent with the medical records).

19        Additionally, Dr. Brooks' outpatient notes from January 4, 2012 describe bilateral positive

20   straight leg raising and tenderness to palpation.  AR 514.  However, the emergency department's

21   physical examination of Plaintiff demonstrated no tenderness in his thoracic and lumbar spine, no

22   edema, and no musculoskeletal aches or pain.  AR 528.  The ALJ may consider such

23   inconsistencies.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ

24   properly discounted two treating doctors' opinions, in part, because other statements and

25   assessments of the claimant's medical condition contradicted them).

26        As Plaintiff notes, the ALJ incorrectly stated "there are no treatment notes in the record of

27   the claimant's clinic visits with Dr. Brooks."  AR 24.  The record before the ALJ actually did

28                                                    15

contain notes from Dr. Brooks' clinic from January 2012. AR 512-14. However, the records do not support the characterization Dr. Brooks provided Plaintiff's attorney in January 2014. Dr. Brooks prescribed medications for Plaintiff's back pain and cholesterol, but his progress notes did not provide any recommendations for a course of treatment or surgery. AR 512-14, 568-74. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ adequately pointed out that the doctor "prescribed a conservative course of treatment, including a recommendation to 'avoid strenuous activities' . . . [and that] [t]hese are not the sort of description[s] and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the Act"); *Jones v. Astrue*, 499 F. App'x 676, 677 (9th Cir. 2012) (ALJ "reasonably found that the treatment notes reflecting a conservative course of treatment provided little in the way of support for [the doctor's] conclusory statement regarding plaintiff's ability to work") (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Thus, the ALJ was correct to accord only "some weight" to Dr. Brooks' opinion.

Plaintiff also relies on the complete copy of Dr. Brooks' November 19, 2013 evaluation submitted to the Appeals Council.[6] Pl.'s Mot. 3-4; *Compare* AR 568 (missing physical examination of Plaintiff), *with* AR 617 (containing physical examination of Plaintiff). The newly-submitted records show Dr. Brooks found "decreased range of motion, tenderness, bony tenderness, [and] pain and spasm" in Plaintiff's lumbar spine. AR 617. However, Dr. Brooks' notes only assess back pain and prediabetes, and provide a referral for a functional capacity exam and MRI. AR 620. This one examination does not alter the ALJ's decision that Dr. Brooks' opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6); SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Brewes*, 682 F.3d at 1159-60, 1163.

Beyond Dr. Brooks' opinion, three physicians in the record, including one consultative

---

[6] "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

United States District Court
Northern District of California

examiner and two state agency physicians, determined Plaintiff could perform medium work.  AR

92-95, 129-30, 526).  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical

and psychological consultants . . . are highly qualified physicians, psychologists . . . who are also

experts in Social Security disability evaluation"); SSR 96-6p, 1996 WL 374180 (July 2, 1996)

("Findings of fact by State agency medical and psychological consultants . . . must be treated as

expert opinion evidence of nonexamining sources at the administrative law judge and Appeals

Council levels of administrative review"); *Bray*, 554 F.3d at 1221, 1227 (ALJ properly relied "in

large part on the DDS physician's assessment" when evaluating the claimant's RFC and rejecting

the treating doctor's testimony regarding claimant's functional limitations).  While the ALJ found

their opinions overstated Plaintiff's functional capacity, AR 24, they are nonetheless, substantial

evidence that counteracts Plaintiff's argument that his medical conditions rendered him unable to

engage in even sedentary work.  *Young v. Heckler*, 803 F.2d 963, 967 (9th Cir. 1986) ("Given that

the majority of medical reports listed appellant as not disabled, and that no medical evidence

suggested that appellant's depression entirely prevented him from working, there was substantial

evidence to support the [ALJ's] finding that appellant's moderate depressive neurosis condition

did not disable him from performing past relevant work.").

The ALJ also considered the other medical evidence of record.  AR 21-25.  Throughout the

relevant period, Plaintiff had two MRIs taken of his lumbar spine, and both revealed unremarkable

findings such as mild to moderate degenerative changes, mild spondylolisthesis at L5-S1, and no

cord compression.  AR 542, 577; *see* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective

medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the

intensity and persistence of your symptoms and the effect [of] those symptoms . . . ."); *Rollins*,

261 F.3d at 857 ("medical evidence is . . . a relevant factor in determining the severity of the

claimant's pain and its disabling effects").

The Court finds this record constitutes substantial evidence supporting the ALJ's decision

to give Dr. Brooks' opinion some weight.  Further, when presented with conflicting medical

evidence, including medical opinions, it is solely the ALJ's responsibility to resolve the conflict.

United States District Court
Northern District of California

1   *See Morgan*, 169 F.3d at 601 ("Where medical reports are inconclusive, 'questions of credibility

2   and resolution of conflicts in the testimony are functions solely of the [ALJ.]'") (quoting *Sample v.*

3   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)); *Magallanes*, 881 F.2d at 750 ("The ALJ is

4   responsible for determining credibility and resolving conflicts in medical testimony.").

5          Finally, Plaintiff argues the ALJ should have contacted Dr. Brooks if he "had any

6   question" about the doctor's opinion.  Pl.'s Mot. at 4.  "In Social Security cases, the ALJ has a

7   special duty to develop the record fully and fairly and to ensure that the claimant's interests are

8   considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d

9   453, 459 (9th Cir. 2001) (citation omitted); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)

10  ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the

11  ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion

12  that the evidence is ambiguous.").  However, it remains the claimant's duty to prove that he was

13  disabled.  *Mayes*, 276 F.3d at 459 (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) ("An individual shall

14  not be considered to be under a disability unless he furnishes such medical and other evidence of

15  the existence thereof as the Secretary may require.")).  The ALJ is only obligated to further

16  develop the record if the evidence is ambiguous or the record is inadequate.  *Id.* at 459-60;

17  *Rodriguez v. . Astrue*, 2010 WL 3835683, at *5 (N.D. Cal. Sept. 28, 2010).

18         Here, the ALJ explained he accorded some weight to Dr. Brooks' opinion because it was

19  conclusory and contrary to the objective record, not because it was unclear.  AR 24.  The ALJ is

20  not required to contact the doctor if he disagrees or discredits the doctor's opinion; he is only

21  required to contact the doctor if the opinion or evidence is unclear or the record is inadequate for a

22  disability determination.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Bayliss*, 427

23  F.3d at 1217 ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or

24  insufficient for the ALJ to make a disability determination.") (citing 20 C.F.R. §§ 404.1512(e),

25  416.912(e)).  Plaintiff fails to demonstrate the ALJ had a duty to further develop the record in this

26  regard.

27         Thus, because the ALJ properly considered each medical opinion and found Dr. Brooks'

28

18

United States District Court
Northern District of California

1    opinion was not supported by the record as a whole, the Court must uphold the ALJ's decision.

2    **B.      Depression**

3           Although Plaintiff alleges disability based on depression, the ALJ found "no objective

4    medical evidence . . . or head injury, resulting from anatomical or psychological abnormalities that

5    are demonstrable by medically acceptable clinical or laboratory diagnostic techniques."  AR 19-

6    20.  Plaintiff argues the ALJ is "mistaken" for two reasons.  Pl.'s Mot. 4-5.  First, Plaintiff directs

7    the Court's attention to evidence in the record of his depression and its impact on his ability to

8    function.  *Id.* at 4.  This includes his emergency room visit in January 2012, during which it was

9    noted that Plaintiff had a history of depression.  *Id.* (citing AR 532).  Plaintiff also directs the

10   Court's attention to his January 2012 and October 2013 exams.  *Id.* (citing AR 513-14, 551).  In

11   January 2012, Dr. Brooks noted Plaintiff's "depressed mood" and prescribed Citalopram.  *Id.*

12   (citing AR 513-14).  In October 2013, the examining physician diagnosed "Depression (Chronic)"

13   and doubled his dosage of Citalopram.  *Id.* (citing AR 551, 554).

14          Second, Plaintiff argues the ALJ "'cherry-picked' the findings from the one psychological

15   evaluation in the record and rejected the evaluator's finding that [he] had a 'rule out' diagnosis of

16   depression/anxiety related to a general medical condition, and that he had moderate impairment in

17   the ability to adapt to changes, hazards, or stressors in the workplace."  *Id.* (citing AR 20).

18          In response, Defendant argues the ALJ correctly concluded Plaintiff's depressive

19   symptoms did not significantly limit his ability to perform basic work activities based on the lack

20   of objective evidence substantiating the existence of medically determinable mental impairment.

21   Def.'s Mot. 16.  The Court agrees.

22          Throughout the relevant period, Plaintiff generally complained of depressed mood to his

23   physicians.  AR 513-14, 623.  Though the physicians recorded Plaintiff's depressed mood and

24   prescribed an anti-depressant, they failed to offer a single prognosis of his conditions or any

25   assessment of his ability to work based on his mental functioning.  AR 551, 554, 623.  Moreover,

26   none of the physicians referred Plaintiff for further mental evaluation.  *See Ukolov v. Barnhart*,

27   420 F.3d 1002, 1006 (9th Cir. 2005) (a medically determinable physical or mental impairment

28                                                        19

United States District Court
Northern District of California

1   must be established by medical evidence consisting of signs, symptoms, and laboratory findings;

2   under no circumstances may the existence of an impairment be established on the basis of

3   symptoms alone) (citing SSR 96-4p, 1996 WL 374180 (July 2, 1996)); *Rollins*, 261 F.3d at 856

4   ("These are not the sort of description and recommendations one would expect to accompany a

5   finding that [the claimant] was totally disabled under the Act.").

6          Further, the ALJ gave great weight to the state agency psychiatric consultants, Adrianne

7   Gallucci, Psy.D., and Alan Goldberg, Psy.D., who determined Plaintiff had no medically

8   determinable mental impairment.  AR 20, 91, 117.  After reviewing Plaintiff's record, they

9   explained Plaintiff's lack of mental health treatment and benign consultative examination

10  supported their determination.  AR 85-96, 111-20; *see* 20 C.F.R. §§ 404.1527(e)(2)(i),

11  416.927(e)(2)(i) ("State agency . . . consultants . . . are highly qualified physicians, psychologists,

12  and other medical specialists who are experts in Social Security disability evaluation."); SSR 96-

13  6p ("Findings of fact by State agency medical and psychological consultants . . . must be treated as

14  expert opinion evidence of nonexamining sources at the administrative law judge and Appeals

15  Council levels of administrative review"); *Bray*, 554 F.3d at 1228-29.  Despite finding Plaintiff

16  had a mild amount of depression and anxiety, the consultative examiner, C. Arpaci, Psy.D.,

17  ultimately ruled out depression and anxiety.  AR 459-63.  Based on this record, the Court finds the

18  ALJ properly excluded depression from the list of Plaintiff's severe impairments.  *See Chaudhry*

19  *v. Astrue*, 688 F.3d 661, 664, 668, 672 (9th Cir. 2012) (ALJ properly excluded carpal tunnel

20  syndrome from the list of claimant's severe impairments, where the treatment record documented

21  limited objective findings).

22  **C.      RFC**

23         The ALJ found Plaintiff is not "illiterate or unable to communicate in English."  AR 25.

24  Plaintiff disputes this finding as he claims he cannot read English.  Pl.'s Mot. at 5.  Even if the

25  Court were to accept this finding, Plaintiff further argues "there is a plethora of evidence in the

26  record that Mr. Velasquez has significant difficulties with English," but the ALJ "again cherry-

27  picks the record."  *Id.*  In response, Defendant argues that the ALJ properly found Plaintiff could

28                                                        20

United States District Court
Northern District of California

1   communicate in English and, even if that was wrong, his difficulties with English did not

2   automatically render him disabled.  Def.'s Mot. at 15-16.

3          RFC is the most a claimant can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  It

4   is assessed by considering all the relevant evidence in a claimant's case record.  *Id.*; *see also*

5   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When a case is before an ALJ, it is the ALJ's

6   responsibility to assess a claimant's RFC.  20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*,

7   260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the

8   claimant's physician, to determine residual functional capacity.").  "Generally, the more consistent

9   an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."  20

10  C.F.R. § 416.927(c)(4).

11         Here, it is not clear that Plaintiff has significant difficulties with English.  Although there

12  was a translator at the hearing, the ALJ noted Plaintiff began answering questions before the

13  translation.  AR 24.  Such observation was further corroborated by the May 2011 Disability

14  Report, in which the interviewer recorded Plaintiff "[s]tated he could not speak English but was

15  able to answer most questions before the phone translator presented them in Spanish" during the

16  face-to-face interview.  AR 354.

17         Additionally, consultative examiner Dr. Arpaci noted Plaintiff could "communicate in

18  English" even though he made some use of an interpreter.  AR 24-25, 459.  Plaintiff notes Dr.

19  Arpaci also reported he does not speak English.  Pl.'s Mot. 5 (citing AR 463).  While this is true, it

20  is not conclusive evidence he cannot communicate in English, especially given the fact the doctor

21  expressly asserted Plaintiff communicated in English.  AR 459.  It is the ALJ's role to interpret the

22  evidence and resolve such conflicts and ambiguities.  *See Magallanes*, 881 F.2d at 750.  Where

23  there may be more than one rational interpretation of the evidence, the ALJ's conclusion, if

24  rational, must be upheld.  *Id.*; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

25         Even if the ALJ's finding that Plaintiff could communicate in English was wrong,

26  Plaintiff's language limitations do not automatically render him disabled.  *See Pinto v. Massanari*,

27  249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not per se disabled if he or she is illiterate.").

28                                                                 21

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The ALJ assessed Plaintiff had the RFC to perform sedentary work.  AR 21.  Despite Plaintiff's

2  subjective complaints, the ALJ explained the factors revealing Plaintiff's "diminished credibility"

3  including "the great variability in the claimant's presentation at various exams," "the exam

4  findings," and Plaintiff's attempts to explain away his positive drug screens.  AR 24-25.

5       As noted above, three physicians in the record determined Plaintiff could perform medium

6  work.  AR 92-95, 129-30, 526.  Although Plaintiff testified he could not walk without an assistive

7  device, the ALJ pointed out that Plaintiff walked with normal gait without an assistive device at

8  the consultative examination.  AR 25.  The ALJ further discussed the lack of any indication that

9  Plaintiff used an assistive device in the emergency department records from January 2012.  *Id.*  Dr.

10  Vesali observed giveaway weakness[7] in Plaintiff's lower extremities indicating symptom

11  magnification or malingering.  AR 23, 525.  Dr. Arpaci, too, opined Plaintiff put forth only "mild

12  effort" during testing.  AR 20, 462.  Plaintiff does not challenge, and in this way concedes, the

13  ALJ's adverse credibility determination.

14       Plaintiff argues it is incorrect that "the ONLY real medical evidence the ALJ uses to deny

15  [Plaintiff's] claim is the one-time May 2013 consultative evaluation."  Pl.'s Mot. 7.  Plaintiff

16  argues this is a "one-page checklist" the ALJ uses "to bolster the only piece of medical evidence

17  that is inconsistent with [Plaintiff's] reports."  *Id.*  However, a review of the record shows the

18  emergency room report is actually a multiple-page document with detailed examination findings.

19  AR 528-34.  Although the ALJ mistakenly cited only the empty checklist, AR 22 (citing Exhibit

20  15F, p. 8 – AR 534), that error does not negate the ALJ's discussion of the remainder of the

21  emergency room report.  The ALJ observed the emergency room report shows Plaintiff exhibited

22  no tenderness in his thoracic and lumbar spine, no edema, no musculoskeletal aches or pain, a

23  normal gait, intact strength and sensation, and no evidence of radiculopathy (negative straight leg

24  raise test).  AR 22, 528.  The ALJ also noted the emergency room report contains "no mention of

25

26  [7] Giveaway weakness is a sign of symptom magnification.  *Thebo v. Astrue*, 436 F. App'x 774,
775-76 (9th Cir. 2011) (it was proper for the ALJ to consider the examining doctor's finding that
27  the claimant's "weakness was 'give away' in nature" in determining the claimant's testimony
regarding his limitations was not credible).

28

an assistive device."  AR 25.  Similarly, Plaintiff twice presented at the emergency room

complaining of abdominal pain in 2014, AR 595-96, 609-10, but on both occasions, Plaintiff

exhibited normal range of motion in his thoracic and lumbar spine, no edema, no lower back

tenderness, and good strength and sensation in arms and legs bilaterally, *id.*; s*ee Rollins*, 261 F.3d

at 857 (objective medical evidence is a relevant factor in determining the severity of the claimant's

pain and its disabling effects).

Based on the combined evidence of record, the Court finds the ALJ reasonably determined

Plaintiff could perform sedentary work.  AR 21.  *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th

Cir. 1992) ("The ALJ stated that [claimant] established he experienced some degree of pain and

discomfort, however, he agreed with the [doctor's] opinion . . . that [claimant] was capable of

performing light work with certain limitations.").  Thus, the Court finds the ALJ's decision

regarding Plaintiff's RFC is without legal error.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's Motion for Summary

Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.  Judgment shall be

entered accordingly.

**IT IS SO ORDERED.**

Dated: September 9, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge